757 N.E.2d 581 (2001)
325 Ill. App.3d 1076
258 Ill.Dec. 892
In re ESTATE OF Joseph ELFAYER, Deceased (Penelope Elfayer, Adm'r, Plaintiff-Appellant,
v.
The City of Chicago, a Municipal Corporation, Defendant-Appellee).
No. 1-99-2866.
Appellate Court of Illinois, First District, Sixth Division.
September 14, 2001.
*583 David C. Wise, Corboy & Demetrio, Chicago, for Appellant.
Larry S. Kaplan, Telly Andrews, Kaplan, Begy & Von Ohlen, Chicago, for Appellee.
Justice BUCKLEY delivered the opinion of the court:
In September 1994, plaintiff Penelope Elfayer, as administrator of her deceased husband's estate, filed a wrongful death and survival action against defendant City of Chicago (the City) alleging both negligent and willful and wanton conduct in maintaining a traffic median barrier. Defendant motioned for summary judgment, which the trial court denied in January 1996. However, as pleading and discovery progressed, defendant again motioned for summary judgment. In April 1999, the trial court granted defendant's motion, thereby disposing of the cause. On appeal, plaintiff contends that the trial court erred in finding on this second motion that there was no genuine issue of material fact as to proximate cause and in holding that plaintiff's expert was not permitted to rely upon measurements of the median taken by police officers. Plaintiff asks that we reverse the grant of summary judgment and remand the cause for further proceedings. We affirm.

BACKGROUND
This cause involves a September 16, 1990, car accident that occurred on the elevated overpass at 3800 South Damen Avenue. Around 9 p.m., Sergeant Joseph Elfayer of the Chicago police department was driving home from work, proceeding southbound on the overpass. At the same time, Salvador Alvarez was driving north-bound with a blood-alcohol level of .206 and cocaine in his system. Alvarez blacked out, lost control of his vehicle and hit the overpass' median, crossing over that barrier and colliding with Elfayer's vehicle. Elfayer died as a result of his injuries. Alvarez pled guilty to driving while intoxicated and reckless homicide.
Plaintiff filed an action against defendant for failure to properly maintain the *584 median barrier, claiming that Elfayer's death was proximately caused by an alleged reduction in the median's height. In his affidavit and deposition, civil traffic engineer Andrew Ramisch concluded that the median at the site of the accident had not been properly maintained for protection from crossover accidents such as this one. Finding the median to be substandard and defective, Ramisch testified that due to roadway resurfacing, the median, which was to be eight inches in height according to original design specifications, had been reduced to six inches. This was a "substantial contributing factor in causation" of the accident, for Ramisch believed that an eight-inch median would have had a "better probability" of preventing Alvarez from crossing over "just because it was higher." However, Ramisch admitted that there is no set standard or regulation governing the height of median barriers. Moreover, though Ramisch claimed he investigated the site personally, he never measured the median. Instead, he admitted that he based his six-inch calculation on a postaccident police report and photographs.
Plaintiff also presented the deposition of Louis Chrzasc, senior project director for the bureau of bridges and transit of the City of Chicago, who testified that design specifications from the late 1950s called for the overpass median to be eight inches high. Chrzasc explained that over the years, the roadway had been resurfaced; however, he believed that the method defendant used was not that of layering asphalt but rather removing the existing layer and laying down a new one. Chrzasc further testified that the median was subject to inspection every two years for defects in height. From photographs of the median, he identified some such defects. Finally, Chrzasc stated that prior to the accident, defendant commissioned and received plans for installing additional protective barriers at the site due to the median's poor condition.
Glenn Hanck, a supervising engineer also from the bureau of bridges and transit, testified in his deposition that in 1984, the consulting engineering firm of Paul E. Mast prepared a project development report for defendant on the condition of roadway areas needing upgrades. This report warned of the dangers of head-on collisions and recommended that the overpass median be restyled for more protection. Hanck testified that no changes were made to the median.
Mark Lawrence, a professional engineer, investigated the accident site for defendant. He took photographs of the median and compared them to photographs taken of the same area at the time of the accident. In his affidavit, Lawrence determined that the median was in substantially the same condition when he investigated it as at the time of the accident. The results of his measurements at the site, provided in photographs included in the record, showed the median to be eight inches high.
After a prior motion was denied years earlier, defendant again moved for summary judgment, arguing that from this evidence, it was clear that Alvarez' action of driving drunk, rather than the median's height, was the proximate cause of Elfayer's death and that defendant is immunized under the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/1-101 et seq. (West 1998)) for any decision it made regarding roadway resurfacing and the median. This time, the trial court granted defendant's motion, finding that the Act applied, that plaintiff had not provided any evidence that defendant had reduced the median's height through repaving and that, whatever the median's height, this was merely a condition, not a proximate *585 cause, of the accident. The court further declared that "it's no issue of material fact that the intervening cause" of Alvarez' drunk driving "was independent." Accordingly, the court granted summary judgment and disposed of the cause. Plaintiff filed the instant appeal.

ANALYSIS
The purpose of summary judgment is to determine whether any genuine issue of material fact exists between the parties. Wrobel v. City of Chicago, 318 Ill.App.3d 390, 393, 252 Ill.Dec. 151, 742 N.E.2d 401 (2000). Summary judgment will thus be granted if the pleadings, depositions and admissions on file, together with any affidavits, show that there is no such issue and that the moving party is entitled to judgment as a matter of law. Billman v. Frenzel Construction Co., 262 Ill.App.3d 681, 684, 200 Ill.Dec. 96, 635 N.E.2d 435 (1993). We review the propriety of an order granting summary judgment de novo. Anderson v. Alberto-Culver USA, Inc., 317 Ill.App.3d 1104, 1110, 251 Ill.Dec. 533, 740 N.E.2d 819 (2000).

A. Duty of Care
To recover in tort on her complaint alleging negligence and willful and wanton conduct, plaintiff must first establish that defendant owed Elfayer a duty of care. See Washington v. City of Chicago, 188 Ill.2d 235, 239, 242 Ill.Dec. 75, 720 N.E.2d 1030 (1999) (a plaintiff cannot recover as a matter of law unless duty is owed); Bialek v. Moraine Valley Community College School District 524, 267 Ill. App.3d 857, 860, 204 Ill.Dec. 924, 642 N.E.2d 825 (1994); Quintana v. City of Chicago, 230 Ill.App.3d 1032, 1036, 172 Ill.Dec. 849, 596 N.E.2d 128 (1992). Whether a duty exists is a question of law for the trial court to decide. DiBenedetto v. Flora Township, 153 Ill.2d 66, 70, 178 Ill.Dec. 777, 605 N.E.2d 571 (1992). Accordingly, a motion for summary judgment may properly address the issue of duty. Quintana, 230 Ill.App.3d at 1036, 172 Ill. Dec. 849, 596 N.E.2d 128.
A municipality is required to maintain its traveled ways according to their normal and intended uses. DiBenedetto, 153 Ill.2d at 71-72, 178 Ill.Dec. 777, 605 N.E.2d 571. A municipality has no duty to initially erect median barriers on its roadways. O'Brien v. City of Chicago, 285 Ill.App.3d 864, 871, 221 Ill.Dec. 134, 674 N.E.2d 927 (1996); Hull v. City of Chicago, 236 Ill.App.3d 405, 406, 177 Ill. Dec. 128, 602 N.E.2d 1300 (1992). It is only when the municipality has undertaken to build a median barrier that it can be held liable. Ross v. City of Chicago, 168 Ill.App.3d 83, 87, 118 Ill.Dec. 760, 522 N.E.2d 215 (1988); see O'Brien, 285 Ill. App.3d at 871, 221 Ill.Dec. 134, 674 N.E.2d 927 (municipality not liable unless actually undertakes improvement). However, even then, the municipality is not an insurer of all accidents that occur as a result of the median. Ross, 168 Ill.App.3d at 87, 118 Ill.Dec. 760, 522 N.E.2d 215. Liability attaches "only when the [median], itself, creates an unreasonably dangerous condition." Ross, 168 Ill.App.3d at 87, 118 Ill. Dec. 760, 522 N.E.2d 215. In other words, the median must directly render the roadway physically defective, thereby making travel unreasonably dangerous. See Ross, 168 Ill.App.3d at 89, 118 Ill.Dec. 760, 522 N.E.2d 215; Harding v. Chicago Park District, 34 Ill.App.3d 425, 429, 339 N.E.2d 779 (1975).
In traffic accident cases, we have consistently held that a duty will be imposed upon the municipality only when the events were reasonably foreseeable. Washington, 188 Ill.2d at 239, 242 Ill.Dec. 75, 720 N.E.2d 1030; DiBenedetto, 153 Ill.2d at 72, 178 Ill.Dec. 777, 605 N.E.2d *586 571; Newsome v. Thompson, 202 Ill. App.3d 1074, 1080, 148 Ill.Dec. 377, 560 N.E.2d 974 (1990). Thus, unless the median is dangerous in and of itself, thereby creating a reasonable foreseeability of injury, no duty is owed to users of the roadway. Washington, 188 Ill.2d at 240-41, 242 Ill.Dec. 75, 720 N.E.2d 1030. Moreover, foreseeability "is limited by the extent of deviation of the motor vehicle causing the * * * injury from the ordinary course of travel." Newsome, 202 Ill. App.3d at 1080, 148 Ill.Dec. 377, 560 N.E.2d 974. A median is not meant to be driven on by any vehicle. Washington, 188 Ill.2d at 241, 242 Ill.Dec. 75, 720 N.E.2d 1030. Its purpose is simply to separate lanes of traffic. Washington, 188 Ill.2d at 241, 242 Ill.Dec. 75, 720 N.E.2d 1030.
In Washington, 188 Ill.2d at 241, 242 Ill.Dec. 75, 720 N.E.2d 1030, we found that the municipality owed no duty to the decedent of a car accident in which a fire truck traveling on a raised median entered oncoming traffic. This was because the median was not inherently dangerous, but became so only when the fire truck's driver decided to drive on it. Moreover, it was not reasonably foreseeable that the driver would use the median in this manner. Similarly in Ross, 168 Ill.App.3d at 89, 118 Ill.Dec. 760, 522 N.E.2d 215, we held that the municipality did not owe a duty in an accident in which a car crossed over a median and struck the decedents' car because the median had not rendered the street physically defective or unsafe for the normal course of intended travel, nor was the crossover a reasonably foreseeable occurrence. And in DiBenedetto, 153 Ill.2d at 71, 178 Ill.Dec. 777, 605 N.E.2d 571, we specifically held that "the fact that outlying and unused portions of [a] road are impassable or dangerous does not constitute the sort of defect for which a local governmental unit is liable."
In the instant case, defendant chose years ago to erect a median on the overpass, potentially exposing itself to liability. However, there is no evidence in the record to show that the median directly rendered the roadway physically defective or unsafe for the normal, intended course of travel. The median itself did not create an unreasonably dangerous condition on the overpass or pose a risk of harm to motorists.
While this accident may have been foreseeable in retrospect, that foreseeability is tempered by the great deviation from the ordinary course of travel that occurred here. Alvarez, while driving drunk and high on cocaine, crossed over a median that in no way was intended to carry vehicular traffic. This is not the type of accident one would expect to occur under normal driving circumstances. Even if it were foreseeable, the magnitude of guarding against this injury and the consequences of placing that burden on defendant would be too great; no municipality would undertake even the most minor or necessary improvements on our roads for fear of facing liability. See Washington, 188 Ill.2d at 239, 242 Ill.Dec. 75, 720 N.E.2d 1030 (magnitude of burden to be placed on municipality is relevant factor to issue of duty); DiBenedetto, 153 Ill.2d at 72, 178 Ill.Dec. 777, 605 N.E.2d 571; O'Brien, 285 Ill.App.3d at 874, 221 Ill.Dec. 134, 674 N.E.2d 927. Therefore, we conclude that defendant did not owe Elfayer a duty of care to insure that the median, an outlying and unused portion of the roadway, would prevent Alvarez, a drunk driver, from crossing over into oncoming traffic.

B. Breach of Duty
Were we to find, contrary to established law, that a duty of care did *587 exist here, summary judgment was still proper because plaintiff did not provide any evidence that this duty was breached. See Thompson v. County of Cook, 154 Ill.2d 374, 382, 181 Ill.Dec. 922, 609 N.E.2d 290 (1993) (the plaintiff must plead and prove breach); Wrobel, 318 Ill.App.3d at 397, 252 Ill.Dec. 151, 742 N.E.2d 401 (summary judgment proper if, from record, the plaintiff fails to prove element of case). Though whether a duty was breached is normally a question for the trier of fact, this issue may be resolved by the trial court as a legal matter when, as here, the evidence presents no genuine issue of material fact. Wrobel, 318 Ill.App.3d at 397, 252 Ill.Dec. 151, 742 N.E.2d 401.
It must first be noted that plaintiff presents no law, statute or guideline setting a mandatory standard for the height of a median. Nor has plaintiff provided any evidence in the record to support her contention that the median would have prevented this accident if it were eight inches high. Plaintiff's experts could only testify as to the "better probability" of deterrence with a higher median, not prevention. Most significantly, plaintiff has not even proven that the median was reduced from eight to six inches. The only testimony regarding the alleged reduction came from Ramisch, who admitted he never measured the median and only based his six-inch calculation on a police report. As the trial court properly held, this calculation was inadmissible hearsay. Jones v. Beker, 260 Ill.App.3d 481, 484, 198 Ill.Dec. 214, 632 N.E.2d 273 (1994) (police reports constitute hearsay); Baumgartner v. Ziessow, 169 Ill.App.3d 647, 655, 120 Ill.Dec. 99, 523 N.E.2d 1010 (1988) (police reports generally inadmissible as substantive evidence). Evidence of the median's height that was admissible here, namely, the photographs and measurements Lawrence took while the median was in substantially the same condition as at the time of the accident, clearly showed the median to be eight inches high. Therefore, were a duty owed, plaintiff failed to establish a breach by defendant.

C. Proximate Cause
Beyond establishing duty and breach, plaintiff is also required to prove that the median's height was a proximate cause of Elfayer's death. Thompson, 154 Ill.2d at 382, 181 Ill.Dec. 922, 609 N.E.2d 290. Just like the issues of duty and breach, proximate cause may be decided on summary judgment as a question of law where, as here, "reasonable men could not differ as to the inferences to be drawn from undisputed facts." Newsome, 202 Ill. App.3d at 1081, 148 Ill.Dec. 377, 560 N.E.2d 974.
A proximate cause is one that produces injury "`through a natural and continuous sequence of events unbroken by any effective intervening cause.' [Citation.]" Gilmore v. Stanmar, Inc., 261 Ill. App.3d 651, 658, 199 Ill.Dec. 189, 633 N.E.2d 985 (1994). This is distinguishable from a condition, which merely makes injury possible. Thompson, 154 Ill.2d at 383, 181 Ill.Dec. 922, 609 N.E.2d 290. If a defendant's conduct "does nothing more than furnish a condition" and that condition causes injury only because of the subsequent independent act of a third party, the creation of that condition is not a proximate cause of the injury. Thompson, 154 Ill.2d at 383, 181 Ill.Dec. 922, 609 N.E.2d 290. Instead, the subsequent independent act breaks the causal connection between the original wrong and the injury and becomes the sole proximate cause. Thompson, 154 Ill.2d at 383, 181 Ill.Dec. 922, 609 N.E.2d 290.
We have consistently affirmed summary judgment granted to municipalities based on the negligent driving of a third person which broke the chain of causation. See *588 Quintana, 230 Ill.App.3d at 1037, 172 Ill. Dec. 849, 596 N.E.2d 128 (inoperative traffic lights were merely condition; proximate cause of the plaintiff's injuries was drivers' failure to comply with statutory requirements); Newsome, 202 Ill.App.3d at 1081-82, 148 Ill.Dec. 377, 560 N.E.2d 974 (proximate cause of injury was driver's act of crossing into opposite lane, not city's lack of barrier or other protective device). More specifically, when the negligent driving was caused by a drunk driver, we have absolved municipalities from liability. See Thompson, 154 Ill.2d at 383, 181 Ill.Dec. 922, 609 N.E.2d 290 (drunk driver was sole proximate cause of accident, as roadway merely provided a location); Billman, 262 Ill.App.3d at 687, 200 Ill.Dec. 96, 635 N.E.2d 435 (drunk driver was effective intervening cause breaking any causal chain between alleged defects in intersection and resulting injuries).
In the instant case, it is undisputed that Alvarez was driving on the overpass while both heavily intoxicated and high on cocaine. He blacked out and left his lane of traffic, hitting the median and crossing into Elfayer's lane. The median was, at most, merely a condition in this accident which made the crash possible. It did not cause Alvarez' reckless driving, which was the sole subsequent independent act breaking the causal connection between the alleged defect in the median's height and Elfayer's death. Accordingly, the trial court did not err in holding that neither the median nor defendant's alleged failure to maintain its height was a proximate cause of this accident.
Discussing all possible issues in the instant case, Hull, 236 Ill.App.3d at 406, 177 Ill.Dec. 128, 602 N.E.2d 1300, specifically addresses medians, crossover accidents, duty and causation. In Hull, the decedent was driving northbound when someone driving southbound lost control of his car, hit the end of the median, crossed over it and struck decedent's car. The plaintiff sued the City of Chicago, alleging negligence in failing to extend the median and making it "crashworthy." We held that, because the City had no duty to erect the median initially, it had no duty to extend it later. Hull, 236 Ill.App.3d at 406, 177 Ill.Dec. 128, 602 N.E.2d 1300. We reiterated that the established law imposes "no duty [on the City] to construct its median barriers in a way that insures that no crossover accidents will occur." Hull, 236 Ill.App.3d at 406, 177 Ill.Dec. 128, 602 N.E.2d 1300. The plaintiff had to prove that the median created a new danger causing the accident, not merely that it failed to prevent the crossover. However, because the median had not made the roadway more dangerous, it was clear that the sole proximate cause of the accident was the third party's bad driving. Hull, 236 Ill.App.3d at 406-07, 177 Ill.Dec. 128, 602 N.E.2d 1300. Therefore, the City was not liable. Because the instant case mirrors Hull, it merits the same result.

D. Tort Immunity Act
Having reached the foregoing conclusions, we need not consider application of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 et seq. (West 1998)), which governs defendant's liability. However, assuming, arguendo, that plaintiff had been able to establish duty, breach and proximate cause, a brief review of the Act shows that it would absolve defendant of any liability here.
Section 3-102(a) imposes a duty upon defendant to safely maintain its property for intended users and permitted uses. 745 ILCS 10/3-102(a) (West 1998). In addition, section 2-201 provides that, while defendant may be liable for ministerial decisions, it is not liable for injuries resulting from its determination of policy or *589 exercise of discretion. 745 ILCS 10/2-201 (West 1998).
In the instant case, Alvarez was not an intended user of the median, nor was his use permitted by defendant. See Washington, 188 Ill.2d at 240-41, 242 Ill. Dec. 75, 720 N.E.2d 1030 (driving on raised median not proper, acceptable or normal). Moreover, defendant's acts or omissions regarding this median were determinations of policy and exercises of discretion. Defendant weighed the costs, benefits and methods of maintaining the median. Its acts were not ministerial, for there is no legally binding set of standards that defendant was required to follow in relation to the median's height. See Wrobel, 318 Ill.App.3d at 394-96, 252 Ill.Dec. 151, 742 N.E.2d 401 (defining "policy" as decisions requiring the municipality to balance competing interests and "discretionary" as the exercise of personal judgment in deciding whether, how and in what manner an act should be performed, but distinguishing "ministerial" as obedience to mandated legal authority). Accordingly, defendant's judgments about how to resurface the overpass, how high to keep the median and whether to provide crossover protection were discretionary policy decisions immune to challenge under the Act.

CONCLUSION
In sum, we hold that summary judgment was proper here. Defendant did not owe Elfayer a duty of care to insure that the median prevented Alvarez from crossing over into his lane of traffic. Furthermore, plaintiff failed to provide evidence showing that defendant breached a duty, if any existed, and evidence showing that the median's height, and not Alvarez' independent act of driving drunk, was a proximate cause of the accident. Even if plaintiff had succeeded in pleading and proving all these elements, the Act immunizes defendant's acts and/or omissions regarding the median. Thus, the trial court did not err in granting summary judgment to defendant, given the facts and circumstances of this case.
Accordingly, for all the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.
Affirmed.
CAMPBELL, P.J., and SHEILA M. O'BRIEN, J., concur.