No. 2-23-0026
Opinion filed April 9, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DARIUS KING, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-L-105 |
| | ) | |
| EL PARAISO DEL PACIFICO, INC., | ) | |
| d/b/a Taqueria El Paraiso, and P.A.A. | ) | |
| PROPERTIES LLC, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (El Paraiso Del Pacifico, Inc., d/b/a Taqueria | ) | Jorge L. Ortiz, |
| El Paraiso, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    At issue in this appeal is whether the trial court erred in granting summary judgment in favor of defendant El Paraiso Del Pacifico, Inc., d/b/a Taqueria El Paraiso (defendant or El Paraiso), on plaintiff Darius King's claim of negligence against defendant. For the following reasons, we reverse and remand.

¶ 2                        I. BACKGROUND

¶ 3    This case arises from a vehicle crash at El Paraiso located at 14 North McAree Road in Waukegan. It is undisputed that, on August 9, 2020, King was a customer at El Paraiso when

Melanie Sanders drove a vehicle through the wall and windows at the front entrance of the restaurant and struck and injured King.

¶ 4    King filed his initial complaint for negligence against Sanders and Alberto Leguizamo, whom he alleged to be the owner and operator of El Paraiso. King named defendant in his first amended complaint (although he misidentified defendant as Taqueria El Paraiso, Inc.). King's second amended complaint was directed only at defendant,[1] alleging negligence in that defendant had a duty of care to operate and maintain the restaurant premises and breached that duty by committing one or more of the following acts or omissions: maintaining parking spaces in relation to the front entrance of the restaurant so as to create a hazard to patrons, failing to provide adequate protective barriers to prevent vehicle crashes into the restaurant, and failing to prohibit parking in front of the restaurant.

¶ 5    On June 6, 2022, defendant moved for summary judgment on King's second amended complaint. Defendant argued that it was entitled to summary judgment for two reasons: (1) it did not owe King a duty to protect against errant drivers by erecting additional barriers and (2) King could not establish that defendant was a proximate cause of his injuries. Defendant argued that it was not reasonably foreseeable that a patron would accelerate a car into the restaurant with enough force to injure a patron. It further argued that it was speculation to claim that additional barriers would have prevented King's injuries.

---

[1]Sanders settled with King. Both Sanders and Leguizamo were stricken as defendants by agreed order on May 25, 2021.

¶ 6    We summarize the summary judgment materials as follows. The traffic crash report indicated that Sanders was the driver of the Nissan Murano that crashed into El Paraiso on August 9, 2020. The report's narrative provided as follows:

"I made contact with *** Melanie Sanders. Melanie advised she was pulling into the parking spot in the front of the restaurant. Melanie advised she must have accidentally hit the gas instead of the brake. Melanie advised she struck someone inside the restaurant[.] I made contact with *** [King].[2] [King] advised he was ordering at the counter when he heard a loud crash and the vehicle came through the wall and struck him."

The crash report also contained a diagram of the crash. The diagram depicts five parking spaces on the east side of the El Paraiso building, which is represented as a hexagon elongated along the north-south walls. The parking spaces effectively abut the east side, or front, of the building and are oriented east-west so that a vehicle pulling into a parking space would be facing west, toward the restaurant. The vehicle in the diagram is depicted as being in the second parking space from the north end of the lot and having bypassed the front end line marking that space. The summary judgment materials also included photographs of the scene. The photographs are consistent with the diagram in the crash report. The photographs show several parking spaces along the front of the restaurant, delineated by painted markings on the surface of the parking lot. The photographs depict a wheel stop at the front of each parking space and less than one car length between the

_____

[2]The report identified the man struck as Darius Petty, whereas the complaint identifies the plaintiff as Darius King. This discrepancy is resolved by King's deposition, where he states that his full name is Darius Devon King-Petty.

front end of the parking spaces and the front wall of the restaurant building. The front of the restaurant has an entrance door and several windows on both sides of the entrance door. Other photographs show that a vehicle breached the front wall of the restaurant, with the front of the vehicle depicted beyond the end of the parking space. One photograph shows the vehicle completely inside the restaurant near the back wall of the restaurant.

¶ 7    Defendant further included the lease for the El Paraiso premises. The lease is dated April 1, 2017, and is between defendant as the tenant and P.A.A. Properties LLC as the landlord. The lease term extended to March 31, 2022. The lease provided that defendant would have the responsibility to maintain the premises in good repair during the term of the lease and the obligation to conduct any construction or remodeling necessary to the use of the premises. Defendant also was permitted to construct fixtures on the premises to facilitate the premises' permitted use as a restaurant.

¶ 8    The final summary judgment material was King's deposition transcript from January 18, 2022, and we summarize his testimony as follows. At the time of his deposition, King was 30 years old and was employed at a food service company. Due to the accident at El Paraiso on August 9, 2020, he missed several months of work. He incurred serious injuries to his legs when Sanders's vehicle pinned him to the front counter of the restaurant, including fractures of his right femur, left tibia, and left fibula. He had surgery on both legs, and he was in the hospital from August 9 to August 20, 2020. At the time of his deposition, King was able to walk, although not as easily as before the accident. He could no longer run like he could before; he described his attempts to run as "Now I flop."

¶ 9        King identified a photograph of El Paraiso and the parking spaces out front of the restaurant. He identified yellow concrete wheel stops at the front of the parking spaces in the photograph, and he confirmed that they were present on the day of his injury.

¶ 10       King never saw Sanders's vehicle before it struck him. He was not certain whether the vehicle drove over the wheel stops, but he assumed it did based on how the vehicle breached the restaurant. King knew that Sanders reported that she accidentally hit the accelerator, but he personally did not know what had caused the car crash.

¶ 11       King could not say how fast the car was traveling when it breached the restaurant, but "it was definitely a heavy impact, very strong and forceful." After he was released from being pinned against the counter by the car, he noticed his legs were "all over, like, kind of spaghetti," and he went to the ground because his legs would not move.

¶ 12       Before responding to defendant's motion for summary judgment, King filed his third amended complaint on June 22, 2022, naming P.A.A. Properties LLC in addition to defendant. P.A.A. Properties LLC was alleged to be the owner and lessor of the El Paraiso premises. The third amended complaint again sounded in negligence, alleging that defendant breached its duty of care in the same three ways alleged in the second amended complaint and added a fourth way: failing to construct, operate, and maintain the seating area of the restaurant to protect from inadvertent vehicle crashes. Defendant answered the third amended complaint and asserted two affirmative defenses: setoff and several liability. P.A.A. Properties LLC asserted the same affirmative defenses in its answer.

¶ 13       King responded to defendant's motion for summary judgment on September 28, 2022. He argued that defendant owed him a duty of care due to the special relationship between El Paraiso and its customers and that defendant's acts or omissions proximately caused his injuries.

¶ 14 On December 7, 2022, the trial court heard defendant's motion for summary judgment. Defendant argued that the concrete wheel stops at the front end of each of the parking spaces in front of El Paraiso complied with the requirements of Waukegan's local code. Defendant argued, at least in part, that its compliance with Waukegan's local code supported that it had no duty of care. As to the element of proximate cause, defendant argued that King's position that other barriers would have prevented his injuries was speculative and required expert testimony.

¶ 15 King responded that the supreme court's decision in *Marshall v. Burger King Corp.*, 222 Ill. 2d 422 (2006), squarely applied and supported a legal duty of care, and he contended that defendant's argument based on the local code went toward the element of breach, not the existence of a duty. The court interjected and asked defendant's counsel whether he agreed about the existence of a duty to protect patrons, and defendant's counsel agreed that a general duty to protect patrons existed. The court then asked King's counsel whether any evidence supported a breach of defendant's duty, and King's counsel responded that defendant's summary judgment motion did not challenge the element of breach. He continued that, had defendant raised the issue of a breach of duty, he would have responded to it, but that was not the case here. As to the element of proximate cause, King argued that an expert was not needed to tell a jury that a protective barrier such as a bollard protects against the type of harm in this case, noting that bollards are placed around courthouses, banks, and other businesses.

¶ 16 On December 21, 2022, the trial court granted summary judgment in favor of defendant. Regarding the issue of defendant's duty of care, the court examined the supreme court's decision in *Marshall* and found it applicable to the facts of this case. It explained that King was an invitee of defendant at El Paraiso and thus stood in a special relationship to defendant, the invitor. The trial court further explained that the mere existence of a duty of care did not depend on whether

defendant was required to erect a specific type of barrier—such a question went toward the issue of a breach of duty. Accordingly, the trial court concluded that defendant owed King a duty of reasonable care.

¶ 17 Although the trial court concluded that defendant owed King a duty of care, it held that summary judgment was proper because King could not prove proximate cause for three reasons. First, the court reasoned that King's allegations—that to prevent King's injury, defendant should have installed barriers, redesigned the parking lot, reinforced the building walls, or redesigned the interior of the restaurant—were conjecture. It explained that King had identified no law that made such measures necessary. Second, the court characterized Sanders's driving as an independent, intervening cause that broke the causal connection between defendant's breach, if any, and King's injuries. And third, the court reasoned that King did not present any expert opinion that barriers or alternative parking designs would have prevented his injuries. The court specifically found that the lack of such testimony was a deficiency that, in and of itself, defeated King's claim that defendant proximately caused his injuries.

¶ 18 Last, the trial court expressly found that no just reason existed to delay enforcement or appeal or both.[3] This timely appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20 King raises several arguments that the trial court erroneously granted summary judgment in favor of defendant: (1) Sanders's vehicle crash did not sever the causal connection between

_____

[3]Following King's notice of appeal, P.A.A. Properties LLC remained as a party and moved for summary judgment several weeks after King's January 1, 2023, notice of appeal. P.A.A. Properties LLC and its motion for summary judgment are not subjects of this appeal.

defendant's acts or omissions and his injuries, (2) expert testimony was unnecessary to create a triable issue of fact, and (3) a genuine issue of material fact existed on the element of proximate cause.

¶ 21    Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, affidavits, and admissions on file show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). A genuine issue of material fact exists where the material facts are disputed or when the material facts are undisputed but reasonable persons can draw different inferences from the facts. *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 15. Summary judgment is a drastic measure and should be granted only when the movant is clearly entitled to judgment. *Id.* We review *de novo* a grant of summary judgment. *U.S. Bank N.A. v. Gold*, 2019 IL App (2d) 180451, ¶ 7.

¶ 22    Before turning to King's several arguments, we note that defendant's summary judgment motion was limited to the negligence elements of duty and proximate cause and that this appeal concerns only the element of proximate cause.[4] See generally *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22 (in a negligence action, a plaintiff must establish that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach proximately

---

[4]Defendant admits as much in its brief, stating that "[t]he issue of duty, which was the entire focus point of *Marshall*, is not the issue presently. Rather *this appeal is based solely on the issue of proximate cause*, of which the *Marshall* case says very little." (Emphasis added.)

caused injury to the plaintiff). Thus, our disposition is limited to whether summary judgment was appropriate on the issue of proximate cause, and we offer no opinion on the element of breach or defendant's ultimate liability in this suit.

¶ 23                               A. Intervening Act

¶ 24     King first argues that the trial court erred in finding that the act of Sanders crashing her vehicle into El Paraiso was an intervening cause of his injuries, because the vehicle crash was foreseeable, or at least the foreseeability of the crash was a question of fact for the jury. We agree with King that the act of Sanders crashing her vehicle into El Paraiso was reasonably foreseeable and that therefore the trial court erred in concluding as a matter of law that Sanders's act of pressing the gas pedal instead of the brake pedal broke the causal connection between defendant's breach of duty, if any, and King's injury. In other words, Sanders's automobile accident was not a superseding cause of King's injuries as a matter of law.

¶ 25     "The negligence of a defendant will not constitute a proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence, but if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability." *Bentley v. Saunemin Township*, 83 Ill. 2d 10, 15 (1980). "[A] 'superseding cause' is a natural force or act of a third party that intervenes between the defendant's tortious conduct and the injury at issue to absolve the defendant of liability." *Thomas v. Khoury*, 2021 IL 126074, ¶ 5. In a superseding-cause situation, both the superseding cause and the defendant's conduct are causes in fact of the injury, but the defendant's conduct is no longer considered the legal cause for reasons of fairness. *Id.* Not every intervening act amounts to a superseding cause: the intervening act must be both independent of the defendant's actions and " 'so extraordinary as to fall outside of the class of normal events.' " *Id.* (quoting Restatement (Second) of Torts § 443, cmt. b, at 473 (1965)). That is, an intervening

act must be not only independent in origin but also unforeseeable. *Id.* (citing *Staub v. Proctor Hospital*, 562 U.S. 411, 420 (2011)).

¶ 26    In reaching our holding that Sanders's crash was not a superseding cause of King's injuries as a matter of law, we begin by reviewing defendant's duty of care, which the trial court properly found, relying on *Marshall*, 222 Ill. 2d 422. In *Marshall*, the supreme court held that, where the complaint alleged that the decedent was a customer at the defendants' restaurant when a third party drove a car through the restaurant wall and killed him, the defendants owed the decedent a duty of care that a business invitor owes its invitees. *Id.* at 440. The court explained that the defendants stood in a special relationship with their customers, as the restaurant was an establishment open to the general public for business purposes, and the duty of care of a business invitor encompassed the type of risk present in the case, *i.e.*, the negligent act of a third person. *Id.*

¶ 27    The *Marshall* court declined to create an exemption to a business invitor's duty of care such that the invitor "ha[s] no duty to protect invitees against out-of-control drivers." *Id.* at 442. Rather, the court stated that "it is reasonably foreseeable, given the pervasiveness of automobiles, roadways, and parking lots, that business invitees will, from time to time, be placed at risk by automobile-related accidents." *Id.* at 442. The court continued that what must be foreseeable is not the precise nature or manner of the occurrence but only the general character of the event or harm. *Id.*

¶ 28    The *Marshall* court also addressed the difference between a duty of care and a breach of the duty of care. *Id.* at 443. It explained that "the issue in this case [was] not whether defendants had a duty to install protective poles, or a duty to prevent a car from entering the restaurant, or some such other fact-specific formula." *Id.* Rather, the defendants owed the decedent a duty of

reasonable care, and whether the defendants breached that duty would depend on the particular circumstances of the case. *Id.* at 443-44.

¶ 29    Here, there is no dispute that El Paraiso was a business open to the public and that King was a customer at El Paraiso when he was injured by Sanders's vehicle. Thus, under *Marshall*, defendant owed King a duty of reasonable care to protect against the negligent acts of third parties, including foreseeable automobile-related accidents.

¶ 30    Consistent with our supreme court's clear pronouncement that automobile-related accidents at restaurants are foreseeable, we hold that Sanders's automobile accident was not of such an extraordinary nature as to constitute an unforeseeable intervening act as a matter of law. We recognize that the *Marshall* court was discussing foreseeability in the context of a legal duty, but foreseeability is a factor in both duty and proximate cause analyses (*Cannon v. Commonwealth Edison Co.*, 250 Ill. App. 3d 379, 384 (1993)). The only explanation in the record for Sanders's accident was that she pressed the gas pedal instead of the brake pedal, and this kind of driver error is the type of negligent third-party act that falls within a business invitor's duty of care envisioned in *Marshall.*

¶ 31    This court has long recognized that negligent automobile accidents are foreseeable. In *Marquardt v. Cernocky*, 18 Ill. App. 2d 135, 146 (1958), this court concluded that a question of fact existed for the jury as to whether the defendants, who owned and operated a picnic ground, were the proximate cause of the plaintiffs' injuries because the defendants failed to take any precautions with respect to vehicles on their steeply sloping parking area. There, the third-party driver had parked on the defendants' sloped parking area, and his car had rolled down the hill and struck one of the plaintiffs, resulting in the loss of her leg. *Id.* at 142-43. Although the driver believed that he had placed the car in reverse to hold the car in place, the gear lever on the car was

found to be in neutral after the accident, and the driver had not set the hand brake. *Id.* at 140-41. In reaching our holding, we explained that the defendants, who operated the grounds as a business, owed their patrons, as business invitees, a duty of reasonable care for their safety. *Id.* at 142. We continued that a jury could have reasonably found that the defendants could have reasonably foreseen the injury to one of the defendants' patrons as a probable result of their "total failure to take precautions with vehicles on their steeply sloping parking area." *Id.* at 146. It was not necessary that the defendants could have foreseen the plaintiffs' precise injuries; it was enough that it was foreseeable that uncontrolled movements of cars parked on the hill could threaten the safety of the defendants' patrons. *Id.* Therefore, we held that the trial court did not err in denying the defendants' motion for judgment notwithstanding the verdict and affirmed the jury verdict in favor of the plaintiffs. *Id.* at 148.

¶ 32 Like with the plaintiffs' injuries in *Marquardt*, the precise nature and occurrence of King's injuries did not need to be foreseeable. See *Blue v. St. Clair Country Club*, 7 Ill. 2d 359, 364 (1955) (explaining that, for a negligent act to be a proximate cause of an injury, it is unnecessary that the particular injury and manner of its occurrence be reasonably foreseeable). If we were to require that the particular manner of Sanders's accident was foreseeable, we effectively would be curtailing the business invitor's duty—as recognized in *Marshall*—by limiting the possibility of liability to only those injuries foreseeable in their precise manner and occurrence. See *Marshall*, 222 Ill. 2d at 442 (only the general character of the harm need be foreseeable). This would impose a duty to guard against harm generally but permit liability only when the precise harm is foreseen specifically. To be sure, we do not hold that any manner of automobile crash on a business invitor's premises is reasonably foreseeable. Rather, we hold only that the type of automobile accident in

this case, like the type of accident in *Marquardt*, was not so extraordinary as to make it an unforeseeable intervening act as a matter of law.

¶ 33    In short, we conclude that Sanders's accident was reasonably foreseeable and therefore her act of driving into the restaurant was not a superseding cause of King's injury as a matter of law. In reaching this conclusion, we reject the applicability of defendant's argument that it was not the proximate cause of King's injury because it merely furnished a condition that made his injury possible. Proximate cause encompasses two distinct requirements: cause in fact and legal cause. *Young v. Bryco Arms*, 213 Ill. 2d 433, 446 (2004). The question of whether a defendant merely furnished a condition is relevant to only part of a proximate cause analysis, namely, whether the defendant's actions were the cause in fact of the alleged injury. See *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-59 (1999) (equating examination of whether a defendant merely furnished a condition to an examination of whether the defendant's conduct was a cause in fact of the injury, *i.e.*, whether the conduct was a material and substantial element in bringing about the injury); *Kramer v. Szczepaniak*, 2018 IL App (1st) 171411, ¶¶ 30-31 (explaining that, however the "condition/cause analysis" is styled, it is the same "cause-in-fact analysis"). However, the question of whether an intervening act constitutes a superseding cause goes toward proximate cause's other requirement, legal cause. *Thomas*, 2021 IL 126074, ¶ 5. Thus, our holding on the issue of superseding cause is properly based on the intervening act's foreseeability and not on whether defendant merely furnished a condition making King's injuries possible. See *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 33 (unlike cause in fact, legal cause involves an assessment of foreseeability). Although defendant's furnished condition argument does not apply to our superseding-cause analysis, we do consider the argument in part C, where we discuss whether King created a genuine issue of material fact on the element of proximate cause.

¶ 34                                    B. Expert Testimony

¶ 35    King also argues that the trial court erred in requiring that he provide expert testimony to create a disputed issue of material fact on the element of proximate cause. We agree.

¶ 36    In an ordinary negligence case like the one before us, expert testimony is generally not necessary to establish the standard of care and that its breach caused the plaintiff's injury. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 296 (2000). Not only are expert opinions generally unnecessary but they may also be inadmissible on matters of common knowledge, unless the subject is difficult to comprehend or explain. *Hernandez v. Power Construction Co.*, 73 Ill. 2d 90, 98-99 (1978) (no expert testimony was necessary on the question of whether the plaintiff's fall from a scaffold could have been prevented if guardrails were installed, as the question dealt with a matter of common knowledge).

¶ 37    Here, King has alleged four breaches of duty that proximately caused his injuries: (1) maintaining parking spaces in front of the restaurant entrance so as to create a hazard, (2) failing to provide protective barriers in front of the restaurant, (3) failing to construct, operate, and maintain the seating area of the restaurant in a way to protect against vehicle crashes, and (4) failing to prohibit parking in front of the restaurant.[5] None of these alleged breaches required expert testimony to create a triable issue of fact on whether the breach proximately caused King's injuries. In fact, several likely involve matters of common knowledge unamenable to expert

---

[5]As mentioned, *supra* ¶ 24, the issue of breach has not been litigated below or on appeal. Thus, although defendant does not admit that any alleged breach of duty occurred, its position on appeal can be fairly understood as, even if it did breach its duty, no breach was the proximate cause of King's injuries.

testimony. To wit, the jury would not need an expert to explain that, had parking been prohibited or otherwise unavailable directly in front of El Paraiso, Sanders likely would not have crashed through the front of the restaurant while attempting to park.

¶ 38　Furthermore, while it is possible that expert testimony could help a jury discern whether a particular protective barrier or structural change to the restaurant would have prevented King's injuries, we disagree with defendant that expert testimony was necessary to survive summary judgment. A jury does not need expert guidance to understand that protective measures, such as bollards designed to prevent wayward automobiles or sturdier restaurant walls or a prohibition on parking immediately in front of glass walls, can prevent an automobile from breaching the inside of a restaurant. See *Ray v. Cock Robin, Inc.*, 10 Ill. App. 3d 276, 280-81 (1973) (holding that the trial court did not err in refusing to permit expert testimony of a traffic engineer when an average person would know and comprehend that guardrails, barriers, or blocks have the effect of slowing, stopping, or deflecting a vehicle from coming onto the premises).

¶ 39　In sum, if a jury were to agree with King that defendant breached its duty in any of the ways alleged, the jury would not need an expert witness to explain how the alleged breach proximately caused King's injuries. Therefore, the trial court erred in requiring King to provide expert testimony to survive summary judgment on the issue of proximate cause.

¶ 40　　　　　　　　　　　　C. Proximate Cause

¶ 41　King's final argument is that he created a triable issue of fact on the issue of proximate cause, asserting that a reasonable jury could find that additional protections at the restaurant likely would have prevented his injuries. For instance, King directs us to photographs of El Paraiso's parking lot and argues that even simple changes, such as having the parking spaces in front of the

restaurant run parallel to the building or prohibiting parking in that area, would have significantly reduced the risk of the accident in this case.

¶ 42    Defendant responds that King failed to present sufficient evidence on proximate cause and relied improperly on conjecture and speculation. It contends that King has failed to identify any support—such as a statute or local code—for why defendant had to take additional protective measures. Further, defendant argues that, at most, it furnished a condition that made King's injuries possible and, therefore, it cannot be the proximate cause of his injuries.

¶ 43    In an action for negligence, a plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff suffered injuries proximately caused by the defendant's breach. *Espinoza v. Elgin, Joliet and Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). The existence of a duty is a question of law for the court to decide, but the issues of breach and proximate cause are factual matters for a jury, so long as a genuine issue of material fact exists. *Id.*

¶ 44    We hold that King presented a triable issue of fact on the element of proximate cause. First, we find unavailing defendant's argument that, to survive its summary judgment motion, King was required to put forth evidence showing that defendant was required to take the alleged protective measures. Defendant's argument thus asserts that King failed to create a triable issue on the element of *breach*. Although King undoubtedly has the burden to show a breach of defendant's duty, defendant never challenged the element of breach on summary judgment, and whether King created a genuine dispute of material fact on the element of breach was not litigated below or argued on appeal. Accordingly, our review is limited to the element of proximate cause.

¶ 45    Next, based on the breaches alleged in the third amended complaint, a reasonable jury could find that those breaches proximately caused King's injuries. The evidence on file includes

the traffic crash report, which indicates that Sanders was pulling into one of the parking spaces directly in front of El Paraiso when the accident occurred. Sanders advised the reporting officer that, when she was pulling into the parking spot, she must have accidentally hit the gas instead of the brake, and she admitted striking someone inside the restaurant. Photographs show parking spaces in which a vehicle would have to drive toward the glass wall of the restaurant in order to park, wheel stops at the front of the parking spaces but no other barriers in front of the restaurant, and a distance between the front of the parking spaces and the restaurant of less than one car length. When Sanders's car stopped, the photographs show it was fully inside the restaurant, having smashed through the front wall and windows.

¶ 46 Viewing this evidence in the light most favorable to King, a reasonable jury could find that several measures could have prevented his injuries. For one, prohibiting parking immediately in front of the building almost certainly would have prevented King's injury, as it is unlikely that Sanders would have tried to park in a no-parking zone. Alternatively, if the parking spots were rearranged differently, perhaps parallel to the restaurant as King suggests, it is unlikely that Sanders's car would have ended up striking King inside the restaurant, even if she lost control of the vehicle by accelerating forward.

¶ 47 Regarding protective barriers, there is no doubt that measures exist, such as installing certain bollards or substantially reinforcing the restaurant's front wall, that could have prevented Sanders's car from breaching El Paraiso and injuring King. Whether defendant was required to take such measures is a different question—a question of breach—and, as mentioned previously, we offer no opinion on that matter. We conclude only that it is not speculation or conjecture to assert that protective barriers could have slowed, stopped, or deflected Sanders's vehicle and thus prevented King's injuries.

¶ 48 Last, we turn to defendant's argument that it merely furnished a condition that made King's injuries possible. In determining whether a defendant is the proximate cause of an injury, Illinois courts have drawn a distinction between a condition and a cause, explaining that, "if the negligence charged does nothing more than furnish a condition by which the injury is possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *Galman*, 188 Ill. 2d at 257. Moreover, the test to be applied in all proximate cause cases is whether the defendant might have anticipated the "intervening efficient cause as a natural and probable result" of its negligence. *Id.* Our supreme court has explained that, when courts examine whether the defendant's conduct simply furnished a condition that made the injury possible, "they are in effect asking whether the defendant's conduct was a material and substantial element in bringing about the injury." *Id.* at 259. And, when courts ask whether the defendant might have anticipated the intervening cause, "they are in effect asking whether the intervening efficient cause was of a type that a reasonable person would see as a likely result of his or her conduct." *Id.*

¶ 49 We find defendant's argument unpersuasive. Notably, none of the cases defendant cites involved a defendant who stood in a special relationship as a business invitor to an invitee. In *Thompson v. County of Cook*, 154 Ill. 2d 374, 376 (1993), the proximate cause of a vehicle passenger's death was alleged to be the county's failure to provide adequate signage warning of a curve in the road. In rejecting this argument, the supreme court noted that the driver was drunk, speeding, eluding the police, and disregarding traffic signs. *Id.* at 383. Thus, the court concluded that the sole proximate cause of the accident was the driver's actions. *Id.*

¶ 50 In *In re Estate of Elfayer*, 325 Ill. App. 3d 1076, 1078 (2001), the plaintiff sued the City of Chicago for failing to maintain a traffic median barrier so that it was high enough to prevent traffic

from crossing over into the oncoming lane. The reckless driver[6] in *Elfayer* was driving on the elevated overpass at 3800 South Damen Avenue while he was high on cocaine with a blood-alcohol level of 0.206, when he blacked out and lost control of his vehicle. *Id.* He hit the overpass median and crossed over the barrier, colliding with the victim's vehicle and killing him. *Id.* The appellate court held that the driver's reckless driving was the sole act proximately causing the victim's death. *Id.* at 1083-84. The court further explained that, regarding medians and crossover accidents, the City of Chicago did not have a duty to construct median barriers to ensure no crossover accidents would occur. *Id.* at 1084 (citing *Hull v. City of Chicago*, 236 Ill. App. 3d 405, 406 (1992)). In fact, the City of Chicago had no duty to erect medians at all. *Id.* Rather, a plaintiff would have to prove that the median created a new danger causing the accident, not merely that it failed to prevent the crossover. *Id.*

¶ 51     Last, *Newsome v. Thompson*, 202 Ill. App. 3d 1074, 1075-76 (1990), involved a motorist who collided with the plaintiff motorcyclist on a street that was undergoing construction. The appellate court noted that, even if the City of Chicago was negligent for failing to post barriers along the street, the City of Chicago was immune under the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85 ¶ 3-104). *Newsome*, 202 Ill. App. 3d at 1079. Thus, the foreseeability of the plaintiff's injury was "of no consequence," but even if it were, the injury was not foreseeable. *Id.* at 1080. The court explained that the construction was merely a condition that made the plaintiff's injury possible, and it was the motorist's act of making an illegal U-turn that proximately caused the plaintiff's injury. *Id.* at 1081-82.

---

[6]The driver pled guilty to reckless homicide and driving while intoxicated. *Estate of Elfayer*, 325 Ill. App. 3d at 1078.

¶ 52    The contexts of these cases, all involving automobile accidents on public roadways and suits against public entities, are clearly distinguishable from the facts of this case. The drivers in those cases were all doing something illegal, even criminal, clearly rendering the defendants' alleged breaches immaterial to the plaintiffs' injuries. For instance, it is unreasonable to believe that a warning sign for a curve would matter to a driver who is drunk, speeding, eluding the police, and ignoring other traffic signs. Moreover, in two of the three cited cases, the defendant either had no duty or was immune from liability.

¶ 53    In contrast, defendant here was a private business with a clear duty to protect its business invitees from the foreseeable negligent acts of third parties, including automobile accidents, while invitees were on its premises. If we assume defendant breached its duties as alleged by King, the breaches would not be mere conditions making King's injuries possible; they would be material and substantial elements in bringing about his injuries. As already explained, had defendant prohibited parking in front of the restaurant or rearranged the parking spots in its parking lot, Sanders likely would not have been driving toward the front of the restaurant and, had protective barriers been in place, her vehicle likely would not have breached the restaurant. Given the context of this case, we refuse to conflate defendant's alleged omissions with furnished conditions.

¶ 54    Accordingly, King created a triable issue of fact on the element of proximate cause and the trial court erred in granting defendant summary judgment to defendant.

¶ 55                                    III. CONCLUSION

¶ 56    For the reasons stated, we reverse the Lake County circuit court's grant of summary judgment and remand for further proceedings.

¶ 57    Reversed and remanded.

*King v. El Paraiso Del Pacifico, Inc.*, **2024 IL** App (2d) 230026

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 21-CF-105; the Hon. Jorge L. Ortiz, Judge, presiding. |
| **Attorneys for Appellant:** | Elizabeth M. Bartolucci, of Bartolucci Law, LLC, of Oak Park, for appellant. |
| **Attorneys for Appellee:** | Robert K. Scott and Andrew J. Meyer, of Meagher & Geer, P.L.L.P., of Chicago, for appellee. |